IN THE CIRCUIT COURT
FOR BALTIMORE COUNTY

| | |
|---|---|
| EDWARD G. SHLIKAS, ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **WDQ06CV2631** |
| ) | |
| SALLIE MAE, INC., ) | COMPLAINT |
| HEMAR INSURANCE ) | |
| CORPORATION OF AMERICA,) | (JURY TRIAL DEMANDED) |
| GREAT LAKES HIGHER ) | |
| EDUCATION GUARANTY ) | |
| CORPORATION, ARROW ) | |
| FINANCIAL SERVICES, ) | |
| PIONEER CREDIT ) | |
| RECOVERY, INC., \ ) | |
| DIVERSIFIED COLLECTION ) | |
| SERVICES, INC., ) | |
| OSI EDUCATION SERVICES,) | |
| INC., NORWEST, INC./ ) | |
| WELLS FARGO INC. UNITED) | |
| STUDENT AID FUNDS, INC.) | |
| Defendants ) | |

I. INTRODUCTION

1. This case involves an organized campaign and systematic strategy, implemented by the defendants, to incessantly harass, embarrass, and inflict emotional distress upon the plaintiff, in order to exhaust his will and pressure him into paying the defendants money for a debt he does not owe.

RECEIVED AND FILED
'06 AUG 11 PH 3:35
CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY

1

EXHIBIT
A

II. <u>JURISDICTION</u>

2. Plaintiff is a citizen and resident of Baltimore County, Maryland.

3. The amount in controversy in this Civil Action is over $25,000.

III. <u>PARTIES</u>

A. <u>Plaintiff</u>

4. Edward G. Shlikas is and was at all times pertinent to the matters complained of below, a citizen and resident of Baltimore, Maryland and the United States.

B. <u>Defendants</u>

5. Sallie Mae, Inc. (Sallie Mae), is a corporation organized and existing under the laws of the State of Pennsylvania, doing business in the State of Pennsylvania, with its principal place of business in Wilkes-Barre, Pennsylvania, P. O. Box 9500, 18773-9500.

6. Hemar Insurance Corporation of America, is a corporation organized and existing under the laws of the State of South Dakota, doing business in the State of South Dakota, with its principal place of business in Sioux Falls, South Dakota, P. O. Box 89711, 57109.

7. Great Lakes Higher Education Guaranty Corporation, is a corporation organized and existing under the laws of the State of Wisconsin, doing business in the State of

2

Wisconsin, with its principal place of business in Madison, Wisconsin, P. O. Box 7860, 53707.

8. Arrow Financial Services, is a Limited Liability Company organized and existing under the laws of the State of Illinois, doing business in the State of Illinois, with its principal place of business in Niles, Illinois, 5996 W. Touhy Avenue, 60714.

9. Pioneer Credit Recovery, Inc. is a corporation organized and existing under the laws of the State of New York, doing business in the State of New York, with its principal place of business in Arcade, New York, P. O. Box 100, 26 Edward Street, 14009.

10. Diversified Collection Services, Inc. is a corporation organized and existing under the laws of the State of California, doing business in the State of California, with its principal place of business in Livermore, California, 333 North Canyons Parkway, Suite 100, 94551-7661.

11. OSI Education Services, Inc. is a corporation organized and existing under the laws of the State of Missouri, doing business in the State of Missouri, with its principal place of business in Chesterfield, Missouri, 390 South Woods Mill Road, Suite #350, 63017.

12. Norwest, Inc./ Wells Fargo Inc. is a corporation organized and existing under the laws of the State of South Dakota, doing business in the State of South Dakota, with

3

its principal place of business in Sioux Falls, South Dakota, P. O. Box 5185, 57117-5185.

13. United Student Aid Funds, Inc. is a corporation organized and existing under the laws of the State of New York, doing business in the State of New York, with its principal place of business in Arcade, New York, P. O. Box 158, 14009-0149.

IV. <u>CLAIMS FOR RELIEF</u>

A. <u>Harassment</u>

14. Since 1998, the defendants have continually and systematically harassed Mr. Shlikas in order to exhaust his will and pressure him into paying the defendants money he does not owe.

15. Since 1998, the defendants have made hundreds of harassing phone calls to Mr. Shlikas, his mother, and other relatives.

16. To this day, the defendants continue to constantly and incessantly call Mr. Shlikas several times a day, approximately three times a day on average, at all hours of the day and night, seven days a week.

17. The constant harassing and threatening phone calls, made by the defendants, proximately caused great anxiety and emotional distress for Mr. Shlikas and his family.

18. The constant and incessant harassment by the defendants proximately caused Mr. Shlikas to have difficulty

4

sleeping and substantially disturbed his mental and emotional tranquillity.

19. Mr. Shlikas was often awakened by the defendants' phone calls early on Saturday and Sunday mornings, which unreasonably deprived Mr. Shlikas of a sound and restful sleep so that he could properly function the following day.

20. Mr. Shlikas was often awakened by the defendants' phone calls late on weekday evenings, after he had gone to bed, which deprived him of a sound and restful sleep before going to work early the next morning, which adversely affected his ability to concentrate and work efficiently at his place of employment the following day.

21. The constant harassing phone calls made by the defendants, morning, noon, and night, seven days a week, caused Mr. Shlikas to develop a fear of answering the telephone.

22. Whenever the phone would ring, Mr. Shlikas' heart rate would increase, his blood pressure would go up, he would become anxious, and he would be afraid to answer the phone, out of the very real fear that it was one of the defendants calling Mr. Shlikas to harass him about the money he allegedly owed the defendants.

23. The defendants also repeatedly called Mr. Shlikas at his workplace, even though Mr. Shlikas told the defendants the phone calls were harassing him.

24. Mr. Shlikas repeatedly requested, through both verbal and written communications, that the defendants stop

calling him at work, because Mr. Shlikas could not receive phone calls at work and the defendants were harassing him at work.

25. The repeated phone calls to Mr. Shlikas' workplace, by the defendants, invaded Mr. Shlikas' right to privacy at his place of employment, which caused him embarrassment and humiliation, loss of reputation, undue stress, and anxiety at work.

26. The defendants threatened to report him to the National Credit Bureaus and destroy his good credit.

27. The defendants followed through with this threat and destroyed his good credit, making it very difficult, if not impossible for Mr. Shlikas to get credit from any company, lender, or credit card company.

28. Despite repeated verbal and written communications by Mr. Shlikas to the defendants to stop the harassing phone calls to him, both at home and at work, the defendants continued to constantly and incessantly harass him, by calling him approximately three times a day, morning, noon, and night, seven days a week, for years and years on end, continuing to this present day.

29. On October 8, 1998, Mr. Edward G. Shlikas wrote Sallie Mae Inc., and requested that he be "discharged" from his loans, before further damage was done to his credit rating.

30. Sallie Mae Inc. ignored Mr. Shlikas' request. Sallie Mae Inc., along with the other defendants, continued

to destroy Mr. Shlikas' good credit rating, harass him with
phone calls, and inundate him with volumes of threatening
mailings.

31. On October 20, 2000, Mr. Shlikas wrote Sallie Mae
Inc., and requested that Sallie Mae not call Mr. Shlikas at
his mother's phone number because the "excessive amount" of
phone calls from Sallie Mae Inc.'s "customer service
representatives" were "disrupting her[Ms. Shlikas']
business" and "harassing Ms. Shlikas and her family,"
including Mr. Shlikas.

32. The October 20, 2000 letter to Sallie Mae Inc.
requested that all future communications be made in writing,
and mailed to Mr. Shlikas.

33. The October 20, 2000 letter to Sallie Mae Inc. also
requested that Sallie Mae not contact Mr. Shlikas' aunt any
further by mail or phone because Sallie Mae's "customer
service representatives" were "harassing" his aunt and "her
family with phone calls and letters."

34. The October 20, 2000 letter to Sallie Mae Inc. also
informed Sallie Mae Inc. that "the phone calls and letters"
to Mr. Shlikas' aunt "breached Mr. Shlikas' privacy rights."

35. Sallie Mae Inc., and the other defendants, ignored
the October 20, 2000 letter and continued to constantly and
incessantly make harassing phone calls to Mr. Shlikas and
his mother, despite Mr. Shlikas' request for the defendants
not to do so, which caused an unreasonable amount of stress
and tension in Mr. Shlikas' life.

36. Throughout the six years following the October 20, 2000 letter, Mr. Shlikas repeatedly requested that the defendants stop the harassing phone calls to his home and workplace, but the defendants continued to constantly and incessantly call him and harass him at home and at work, by calling him approximately three times a day, morning, noon, and night, seven days a week, for years and years on end, continuing to this present day.

37. In the Spring of 2006, several of the defendants threatened to garnish Mr. Shlikas' very modest, hard-earned wages. This is when Mr. Shlikas decided that enough was enough, and it was time to file a civil action to stop the defendants from harassing him any further, and to get the defendants to compensate Mr. Shlikas for all the harassment, invasions of privacy, and emotional distress the defendants inflicted upon Mr. Shlikas throughout the past eight years, continuing to the present day.

B. Infliction of Emotional Distress

38. Plaintiff realleges and incorporates herein by reference paragraphs 14-37 as if fully set forth herein.

39. The defendants conduct as herein set out, was either done with the intention of causing Mr. Shlikas emotional distress, embarrassment, and humiliation or was done with reckless indifference to the likelihood that emotional distress, embarrassment, and humiliation might result; said conduct was willful wanton and in reckless

8

disregard of the Mr. Shlikas' right to live his life without the excessive and unreasonable harassment inflicted by the defendants.

C. Invasion of Privacy

40. Plaintiff realleges and incorporates herein by reference paragraphs 14-39 as if fully set forth herein.

41. The defendants invaded Mr. Shlikas' right to privacy and unreasonably intruded upon his right to seclusion at work, to perform his work duties without being harassed by the defendants, by repeatedly calling him at his workplace.

42. Despite Mr. Shlikas' repeated requests to the defendants, both verbal and written, to stop calling him at work and harassing him, the defendants continued to do so.

D. Federal Fair Debt Collection Act Violations

43. Plaintiff realleges and incorporates herein by reference paragraphs 14-42 as if fully set forth herein.

44. The defendants violated the Federal Fair Debt Collection Act by harassing and inflicting emotional distress on Mr. Shlikas by constantly and incessantly calling him at home and at work, approximately three times a day, morning, noon, and night, seven days a week, for years and years on end, continuing to this present day, despite Mr. Shlikas' repeated verbal and written requests to the

defendants to stop calling him and harassing him at home and at work.

### E. Maryland Consumer Debt Collection Act Violations

45. Plaintiff realleges and incorporates herein by reference paragraphs 14-44 as if fully set forth herein.

46. The defendants violated the Maryland Fair Debt Collection Act by harassing and inflicting emotional distress on Mr. Shlikas by constantly calling him at home and at work, approximately three times a day, morning, noon, and night, seven days a week, for years and years on end, continuing to this present day, despite Mr. Shlikas' repeated verbal and written requests to the defendants to stop calling him and harassing him at home and at work.

### V. PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully demands judgment against the defendants, jointly and severally:

47. For compensatory damages for the acts described herein, inflicted upon the plaintiff by the defendants in the amount of $80,000.

48. For punitive damages in the amount of $2,190,000.

49. For fees and expenses incurred by the plaintiff during this civil action against the defendants.

50. For such other and further relief as the court may deem necessary.

10

VI.  <u>JURY TRIAL DEMAND</u>

51. Plaintiff hereby demands and requests that all claims, actions, and causes of action at law set forth herein be tried before a jury.

Respectfully Submitted,

By: *Edward G. Shlikas*

Edward G. Shlikas
10308F Sunnylake Place
Baltimore, Maryland
21030
PHONE # 410-666-1314